UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

JASON P. CHEN,                              )    No. CV 12-6819 FFM
                                            )
                      Petitioner,           )    MEMORANDUM DECISION DENYING
                                            )    PETITION FOR WRIT OF HABEAS
        v.                                  )    CORPUS PURSUANT TO 28 U.S.C. §
                                            )    2254
KELLY HARRINGTON, Warden                    )
                                            )
                      Respondent.           )
_____        )

## I. PROCEEDINGS

Petitioner, Jason P. Chen ("Petitioner"), a state prisoner in the custody of the California Department of Corrections, filed a Petition for Writ of Habeas Corpus by a Person in State Custody pursuant to 28 U.S.C. § 2254 ("Petition") on August 8, 2012.  Petitioner and respondent consented to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Petitioner filed a First Amended Petition on May 24, 2013.  On August 13, 2013, respondent filed an answer to the First Amended Petition.  On March 10, 2014, Petitioner filed a traverse.  The matter, thus, stands submitted and ready for decision.

/ / /

/ / /

/ / /

## II.  PROCEDURAL HISTORY

A Los Angeles County Court jury found Petitioner guilty of first degree murder (Cal. Penal Code § 187).  (Clerk's Transcript ["CT"] 135.)  The jury also found true the allegation that he personally and intentionally discharged a firearm proximately causing death (Cal. Penal Code § 12022.53).  (*Id.*)  Petitioner was sentenced to an indeterminate sentence of 50 years to life in state prison.  (CT 159-60.)

Petitioner then appealed his conviction.  On January 28, 2011, the California Court of Appeal filed an unpublished opinion affirming the judgment against him.  Thereafter, he filed a petition for review in the California Supreme Court, which denied review on June 27, 2012.  He then filed a petition for writ of habeas corpus in the California Supreme Court, which denied the petition on June 27, 2012.

After filing a federal habeas petition that was dismissed without prejudice, Petitioner initiated this action.

## III.  FACTUAL BACKGROUND

The following facts were taken verbatim from the California Court of Appeal's opinion affirming Petitioner's conviction:

> In January 2008, David Hoang and his friend Tahn Hai Cong went to visit [Petitioner] at an El Monte motel where [Petitioner] and his mother resided.  Hoang, who was 25 years old at the time of trial, had known Cong since the two of them were about 16 years old and members of the same "Wah-Ching" gang.  By January 2008, neither man had been associated with the gang for over two years.  Hoang had known [Petitioner] since [Petitioner] was about 13 years old; [Petitioner] had also been a member of the Wah-Ching gang.  Hoang

/ / /

2

and [Petitioner] had lost touch for about a year, but had resumed contact in late 2007.

Hoang knew [Petitioner] had "always disliked" Cong; their problems went "way back." [Petitioner] viewed Cong as a "hood hopper," *viz.*, someone who moved from gang to gang, an activity that demonstrated disrespect for a gang. [Petitioner] also disliked and found annoying Cong's jokes and attitude. [Petitioner] was also irritated by Cong's persistent attempts to "spar" with [Petitioner]. Sometime in mid-January, about a week before the shooting, [Petitioner] invited Hoang to visit him at the motel. When [Petitioner] learned Hoang was with Cong, [Petitioner] told Hoang to bring him along, and said he had no problem with Cong. During that visit, the three men drank beers and talked for about 40 minutes. Hoang did not observe problems in any interaction between [Petitioner] and Cong.

On the evening of January 19, 2008, [Petitioner] called Hoang and told him he had been disciplined by "a couple of homies from the hood" with whom he was having problems. He said he needed someone to talk to. Hoang told [Petitioner] he was with Cong; [Petitioner] told Hoang to bring him along. Cong and Hoang drove over in Cong's car. They stopped on the way to buy beer to share with [Petitioner], although no one drank any after they arrived. After they arrived at the motel and knocked on his door, it took a while for [Petitioner] to emerge. After he did, Hoang, Cong and [Petitioner] stood in the parking lot talking and "joking around." Hoang said [Petitioner] seemed very irritated by some of Cong's comments, and Cong "calling him out to box for fun," as he had done in the past.

/ / /

3

After Hoang, Cong, and [Petitioner] had been standing around for about 10 minutes, Steven Chen drove into the motel parking lot. Long Tran was sitting in the passenger seat. Chen, [Petitioner], and Tran had known one another for about two years and used to "hang out." Tran was a member of the Wah-Ching gang, but Chen was not. [Petitioner] had called Chen and Tran at about midnight and asked them to drive him to a party. Chen saw [Petitioner] standing in the parking lot with Cong, whom Chen knew, and another man (Hoang) whom he did not know. Chen did not turn off the engine of his car because he planned to pick up [Petitioner] and leave.

Tran stepped out of the car, said hello to [Petitioner] and told him to get in. [Petitioner] refused, and told Tran and Chen to leave. [Petitioner] lifted his shirt and flashed a gun at Tran that was tucked into [Petitioner's] waistband. Tran assured [Petitioner] he was not afraid of the gun, said he had his own and told [Petitioner] to get into the car. He also said, "'if you're going to pull the trigger, pull it. If you're going to do something, do it.'" Tran then said, repeatedly, "'he's not going to do nothing. He's not going to do nothing.'"

At that point, [Petitioner] pulled the gun from his waistband and pointed it in the direction of Hoang and Cong. Hoang ran away. [Petitioner] began to chase Cong around the parking lot and some parked cars, firing his gun at him. Hoang heard [Petitioner] call Cong a "fucking bitch." He also heard Cong tell [Petitioner] that he was "sorry," and beg for mercy. [Petitioner] pursued Cong around a car and Cong, who had already been shot, fell to his knees. [Petitioner] stood over Cong and continued to fire at his head. Hoang heard [Petitioner] shoot until he emptied the entire clip, and then heard him keep "shooting blanks." Hoang also thought he heard

4

Chen and Tran laughing in the car, although Chen denied either of them had laughed.

When the shooting began, Steven Chen, whose car had remained in the middle of the parking lot, began backing up.  He testified the shooting came as a surprise to him and he wanted to leave without [Petitioner].  But, when [Petitioner] ran over to Chen's car Chen stopped backing up; [Petitioner] had a gun and Chen was afraid.  Tran opened the door to let [Petitioner] into the back seat.  [Petitioner's] mother ran out of the motel, screaming (in Taiwanese), "'What happened?  What happened?'"  She went back into the motel as Chen drove off with Tran and [Petitioner].

Chen drove [Petitioner] (who still carried the gun) to a friend's house in Orange County.  On the way there, Chen asked [Petitioner] why he had done what he did.  [Petitioner] told him it involved a "money issue," and also a long-held "grudge" against Cong with whom he had "got[ten] into a fight when they were younger."  After a couple of hours, Chen left alone.  When he got home, Chen told his parents what had happened.  They hired an attorney who advised Chen to contact the police.  Chen did so, and was eventually given use immunity in the prosecution of this action.

The police officer who responded to the scene of the shooting found Cong lying on the ground, covered in blood.

Homicide Detective Gean Okada of the Los Angeles Sheriff's Department (LASD), was assigned to supervise the investigation.  At the scene, Detective Okada observed five empty shell casings, five live rounds, some bullet fragments, and some of the victim's clothing as well as a few unopened cans of beer.  Detective Okada interviewed Hoang the same morning as the shooting, and spoke with Chen when

he contacted the police a few days later.  [Petitioner] was arrested about nine months after the shooting.

The forensic pathologist who performed the autopsy on Cong found six gunshot wounds.  He opined Cong died as a result of multiple gunshot wounds.

LASD Forensic Firearms Examiner David Kim testified that he examined five unfired/live nine-millimeter Luger caliber cartridges, five fired nine-millimeter Luger caliber cartridge cases, two fragments of fired bullets, and the bullet recovered from the coroner. He opined that the fired cartridge cases had each been fired by the same firearm.  Deputy Kim also testified the three bullet fragments were fired from a single gun.  However, Deputy Kim did not have the gun and was not able to determine whether the fired cartridge cases and the bullet fragments were fired from the same weapon.  Deputy Kim also testified that, when the slide of a gun is pulled back sharply without the trigger being pulled, an unfired cartridge will be thrown out.  In addition, if a gun is not held firmly when fired, it can jam.  If the slide is pulled back at that point, it can eject a live round.

(Lodged Doc. No. 6 at 3-6.)

## IV.  PETITIONER'S CLAIMS

1.    The prosecutor failed to introduce sufficient evidence to support the jury's verdict that Petitioner murdered Tahn Hai Cong with premeditation and deliberation.

/ / /

/ / /

/ / /

2.   Trial counsel deprived Petitioner of his Sixth Amendment right to effective assistance of counsel by failing to conduct an adequate investigation into facts that would have impeached a prosecution witness and implicated him as an accomplice in the charged murder.

3.   Trial counsel deprived Petitioner of his Sixth Amendment right to effective assistance of counsel by failing to request that the jury be instructed on the lesser included offense of manslaughter.

4.   Appellate counsel violated Petitioner's right to effective assistance of appellate counsel by failing to raise on appeal the foregoing claims of ineffective assistance of trial counsel.

5.   Petitioner was denied his Sixth Amendment right to trial counsel because his counsel was laboring under an actual conflict of interest that prevented counsel from adequately defending Petitioner of the charge against him.

## V.  STANDARD OF REVIEW

The standard of review applicable to Petitioner's claims herein is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") (Pub. L. No. 104-132, 110 Stat. 1214 (1996)). *See* 28 U.S.C. § 2254(d); *see also Lindh v. Murphy*, 521 U.S. 320, 336, 117 S. Ct. 2059, 138 L. Ed. 2d 481 (1997).  Under AEDPA, a federal court may not grant habeas relief on a claim adjudicated on its merits in state court unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

/ / /

/ / /

/ / /

the State court proceeding."[1]  28 U.S.C. § 2254(d); *see Williams v. Taylor*, 529 U.S. 362, 402, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).

The phrase "clearly established Federal law" means "the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision."[2]  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  However, a state court need not cite the controlling Supreme Court cases in its own decision, "so long as neither the reasoning nor the result of the state-court decision contradicts" relevant Supreme Court precedent which may pertain to a particular claim for relief.  *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) (*per curiam*).

A state court decision is "contrary to" clearly established federal law if the decision applies a rule that contradicts the governing Supreme Court law or reaches a result that differs from a result the Supreme Court reached on "materially indistinguishable" facts.  *Williams*, 529 U.S. at 405-06.  A decision involves an "unreasonable application" of federal law if "the state court identifies the correct governing legal principle from [Supreme Court] decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413. A federal habeas court may not overrule a state court decision based on the federal court's independent determination that the state court's application of governing

---

[1]  In addition, under 28 U.S.C. § 2254(e)(1), factual determinations by a state court "shall be presumed to be correct" unless the petitioner rebuts the presumption "by clear and convincing evidence."

[2]  Under AEDPA, the only definitive source of clearly established federal law is set forth in a holding (as opposed to dicta) of the Supreme Court.  *See Williams*, 529 U.S. at 412; *see also Yarborough v. Alvarado*, 541 U.S. 652, 660-61, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004).  Thus, while circuit law may be "persuasive authority" in analyzing whether a state court decision was an unreasonable application of Supreme Court law, "only the Supreme Court's holdings are binding on the state courts and only those holdings need be reasonably applied."  *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

1   law was incorrect, erroneous, or even "clear error." *Lockyer*, 538 U.S.

2   at 75.  Rather, a decision may be rejected only if the state court's application of

3   Supreme Court law was "objectively unreasonable." *Id.*

4         The standard of unreasonableness that applies in determining the

5   "unreasonable application" of federal law under Section 2254(d)(1) also applies in

6   determining the "unreasonable determination of facts in light of the evidence"

7   under Section 2254(d)(2).  *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).

8   Accordingly, "a federal court may not second-guess a state court's fact-finding

9   process unless, after review of the state-court record, it determines that the state

10   court was not merely wrong, but actually unreasonable."  *Id.*

11         Where more than one state court has adjudicated the petitioner's claims, the

12   federal habeas court analyzes the last reasoned decision.  *Barker v. Fleming*, 423

13   F.3d 1085, 1091 (9th Cir. 2005) (citing *Ylst v. Nunnemaker*, 501 U.S. 797, 803,

14   111 S. Ct. 2590, 115 L. Ed. 2d 706 (1991) for presumption that later unexplained

15   orders, upholding judgment or rejecting same claim, rest upon same ground as the

16   prior order).  Thus, a federal habeas court looks through ambiguous or

17   unexplained state court decisions to the last reasoned decision in order to

18   determine whether that decision was contrary to or an unreasonable application of

19   clearly established federal law.  *Bailey v. Rae*, 339 F.3d 1107, 1112-13 (9th Cir.

20   2003).

21

22   **VI.  DISCUSSION**

23   **A.    Sufficiency of the Evidence**

24         In his first claim for relief, Petitioner contends that the prosecutor failed to

25   introduce sufficient evidence that Petitioner committed premeditated and

26   deliberate murder.  According to Petitioner, the evidence showed, at best, that he

27   rashly and spontaneously decided to kill Cong.  As such, Petitioner surmises that

28   he could be guilty of, at most, voluntary manslaughter, not first degree murder.

1   The California Court of Appeal rejected this claim on the merits.  As explained

2   below, the court of appeal did not commit constitutional error in doing so.

3   Habeas relief is unavailable on a sufficiency of the evidence challenge

4   unless "no rational trier of fact could have agreed with the jury."  *Cavasos v.*

5   *Smith*, __ U.S. __, 132 S. Ct. 2, 181 L. Ed. 2d 311 (2011) (*per curiam*); *Jackson v.*

6   *Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979).  All

7   evidence must be considered in the light most favorable to the prosecution.

8   *Jackson*, 443 U.S. at 319.  Accordingly, if the facts support conflicting inferences,

9   reviewing courts "must presume – even if it does not affirmatively appear in the

10  record – that the trier of fact resolved any such conflicts in favor of the

11  prosecution, and must defer to that resolution."  *Id.* at 326; *Bruce v. Terhune*, 376

12  F.3d 950, 957 (9th Cir. 2004) (*per curiam*); *Turner v. Calderon*, 281 F.3d 851,

13  882 (9th Cir. 2002).  Under AEDPA, federal courts must "apply the standards of

14  *Jackson* with an additional layer of deference."  *Juan H. v. Allen*, 408 F.3d 1262,

15  1274 (9th Cir. 2005).

16  Furthermore, circumstantial evidence and inferences drawn from it may be

17  sufficient to sustain a conviction.  *See Jones v. Wood*, 207 F.3d 557, 563 (9th Cir.

18  2000) (finding sufficient evidence for murder conviction where "evidence was

19  almost entirely circumstantial and relatively weak").  The reviewing court must

20  respect the exclusive province of the factfinder to determine the credibility of

21  witnesses, resolve evidentiary conflicts, and draw reasonable inferences from

22  proven facts.  *See United States v. Goode*, 814 F.2d 1353, 1355 (9th Cir. 1987).

23  To prove deliberate and premeditated murder under California law, the

24  prosecutor must establish that the defendant weighed the consequences and

25  considerations of his actions before he took the action leading to his conviction.

26  *See People v. Koontz*, 27 Cal. 4th 1041, 1080, 119 Cal. Rptr. 2d 859, 46 P.3d 335

27  (2002). This showing, however, does not require proof that the defendant had a

28  great deal of time in which to weigh those consequences and considerations: "The

10

process of premeditation and deliberation does not require any extended period of time. The true test is not the duration of time as much as it is the extent of the reflection.  Thoughts may follow each other with great rapidity and cold, calculated judgment may be arrived at quickly. . . ." *Id*.  In considering whether the defendant acted with premeditation and deliberation, California courts consider three categories of evidence: (1) prior planning activity; (2) motive; and (3) the manner of killing.  *Id.* at 1081.

Here, the jury reasonably could infer that Petitioner planned to kill Cong.  Although Petitioner suggests that he had no idea that his friend Hoang would be bringing Cong to Petitioner's residence on the night of the murder, testimony showed that Hoang told Petitioner that he was with Cong.  And, when he learned of that fact, Petitioner urged Hoang to bring Cong.  Moreover, as the court of appeal noted, Petitioner armed himself with a loaded gun before Cong arrived.  *See Jones v. Woods*, 207 F.3d 557, 563 (9th Cir. 2000) (securing weapon before confronting victim supports reasonable inference of prior planning to support conviction for premeditated and deliberate murder).  Additionally, even though Petitioner was aware that Cong and Hoang were bringing beers to drink with Petitioner, Petitioner refrained from drinking.  Based on this evidence, the jury reasonably could infer that Petitioner planned to kill Cong and that he maintained his sobriety so as not to interfere with that plan.

Moreover, based on the evidence at trial, the jury reasonably could conclude that Petitioner had motive to kill Cong.  Hoang testified that Petitioner had long-standing problems with Cong, dating back years.  Those problems stemmed from Petitioner's annoyance with Cong for being a "hood hopper" and for boxing with Petitioner for fun.  Additionally, Chen testified that, after the shooting, Petitioner explained that he had shot Cong because they had gotten into a fight a long time ago.  Petitioner also told Chen that there was a money issue between Cong and Petitioner.  Adding to the weight of this evidence is the fact

1   that, before being hit with the fatal shot, Cong told Petitioner that he was sorry.

2   What is more, Petitioner called Cong a "fucking bitch" as Cong pleaded for mercy

3   and forgiveness.  Put simply, the record was rife with evidence showing that

4   Petitioner had motive to kill Cong.

5        Finally, the manner of the shooting evidences premeditation and

6   deliberation.  Petitioner fired an entire magazine of bullets at Cong.  Indeed,

7   testimony showed that Petitioner continued to fire his weapon, even though he had

8   run out of bullets.  And, Petitioner fired several of the gunshots at Cong while

9   Cong was on the ground pleading for his life.  Moreover, after the shooting,

10  Petitioner confided to his friend why he had shot Cong.  These facts easily support

11  a finding that the murder was premeditated and deliberate.  *See Jackson*, 443 U.S.

12  at 325 (evidence of shooting multiple shots at close range indicates manner of

13  attempted killing consistent with premeditation and deliberation); *Koontz*, 27 Cal.

14  4th at 1082 (manner of killing supported deliberate intent to kill where defendant

15  fired close range shot "at a vital area of the [victim's] body").

16       Accordingly, the state courts reasonably rejected Petitioner's sufficiency of

17  the evidence claim.

18       **B.**    **Trial Counsel's Performance**

19       Petitioner asserts several challenges to his trial counsel's performance.  In

20  the first, Petitioner maintains that counsel failed to adequately investigate the facts

21  underlying Petitioner's conviction.  Specifically, Petitioner faults counsel for

22  failing to uncover facts about Chen, one of the prosecution's main eyewitnesses,

23  that would have impeached his credibility in the eyes of the jury.  According to

24  Petitioner, counsel should have discovered and presented evidence regarding

25  Chen's gang affiliation and his purported involvement in the crime.  Petitioner

26  presumably believes that evidence of Chen's gang affiliation would have caused

27  the jury to doubt his testimony.  Moreover, Petitioner believes that counsel could

28  have shown that Chen was an accomplice to the murder by eliciting testimony that

12

he knew of Petitioner's plan to murder Cong and agreed to act as Petitioner's getaway driver.  According to Petitioner, had these facts been established, the trial court would have been forced to instruct the jury to view Chen's testimony with caution because he was an accomplice in the charged murder.

In his second challenge to counsel's performance, Petitioner asserts that trial counsel erred in failing to request that the jury be instructed on voluntary manslaughter, a lesser included crime of first degree murder.  According to Petitioner, such an instruction was warranted because the evidence supported an inference that Petitioner did not premeditate the murder; rather, the murder was the result of a rash and spontaneous act on Petitioner's part.

Finally, Petitioner faults counsel for failing to adequately cross-examine Hoang, one of the eyewitnesses to the murder, about what he actually saw during the murder.  Specifically, Petitioner notes that Hoang made inconsistent statements about whether he saw someone get in and out of the vehicle in which Petitioner drove away after the shooting.

In analyzing claims challenging the performance of trial counsel, reviewing courts apply the two prong test set forth in *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  First, the petitioner must prove that his attorney's representation fell below an objective standard of reasonableness.  *Id.* at 687-88, 690.  To establish deficient performance, the petitioner must show his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687; *Williams*, 529 U.S. 362, 391, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).  In reviewing trial counsel's performance, however, courts "strongly presume[] [that counsel] rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690; *Yarborough v. Gentry*, 540 U.S. 1, 8, 124 S. Ct. 1, 157 L. Ed. 2d 1 (2003).  Only if counsel's acts and omissions, examined within the context of all

the surrounding circumstances, were outside the "wide range" of professionally competent assistance, will petitioner meet this initial burden. *Kimmelman v. Morrison*, 477 U.S. 365, 386, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986); *Strickland*, 466 U.S. at 690.

Second, the petitioner must show that he was prejudiced by demonstrating a reasonable probability that, but for his counsel's errors, the result would have been different. *Strickland*, 466 U.S. at 694. The errors must not merely undermine confidence in the outcome of the trial, but must result in a proceeding that was fundamentally unfair. *Williams*, 529 U.S. at 393 n.17; *Lockhart*, 506 U.S. at 369. The petitioner must prove both deficient performance and prejudice. A court need not, however, determine whether counsel's performance was deficient before determining whether the petitioner suffered prejudice as the result of the alleged deficiencies. *Strickland*, 466 U.S. at 697.

Here, the California Supreme Court rejected each of Petitioner's challenges on their respective merits. In doing so, the California Supreme Court did not commit constitutional error. Each of Petitioner's allegations of attorney error is addressed in turn below.

### 1.    Counsel's Investigation

A criminal defense counsel "has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. "'A lawyer who fails adequately to investigate, and to introduce into evidence, [information] that demonstrates his client's factual innocence, or that raises sufficient doubts as to that question to undermine confidence in the verdict, renders deficient performance.'" *Reynoso v. Giurbino*, 462 F.3d 1099, 1112 (9th Cir. 2006) (quoting *Lord v. Wood*, 184 F.3d 1083, 1093 (9th Cir. 1999)); *see also Duncan v. Ornoski*, 528 F.3d 1222, 1234 (9th Cir. 2008) ("This court has repeatedly held that a lawyer who fails adequately to investigate and introduce [evidence] that demonstrate[s] his client's factual innocence, or

raise[s] sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance.").

Here, Petitioner can show no prejudice with regards to counsel's purported deficient investigation. Although Petitioner asserts that further investigation would have shown that Chen was an accomplice to the crime, he offers no actual facts to support that assertion. Furthermore, Chen testified that he was attempting to leave when he was stopped by Petitioner. Chen also explained that he allowed Petitioner into his car because Petitioner was armed and Chen feared for his life. In an attempt to counter that explanation, Petitioner notes that Hoang testified that it appeared to him as if Chen was waiting for Petitioner. However, this fact is inconsequential because the jury heard Hoang's testimony on that point. Likewise, the jury heard testimony that Petitioner may have dropped his gun and retrieved it before he drove away in Chen's car. In other words, the facts that, in Petitioner's view, showed Chen's involvement in the crime were presented to the jury.

Moreover, there is no merit to Petitioner's suggestion that further investigation would have caused the trial court to conclude that Chen was an accomplice and, therefore, instruct the jury to view Chen's testimony with caution. The trial court acknowledged that there were facts that supported a possible inference that Chen harbored Petitioner after the shooting. But, in the trial court's view, those facts, at most, supported an inference only that Chen was an accessory after the fact. Pursuant to California law, one who is merely an accessory after the fact is not an accomplice. *See People v. Sully*, 53 Cal. 3d 1195, 283 Cal. Rptr. 144, 812 P.2d 163 (1991) (distinguishing accomplice from accessory after the fact). Citing that law, the trial court, and later the court of appeal, held that an accomplice instruction was not required under California law. This Court is bound by the state courts' interpretation of state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005) (*per curiam*)

(stating that "a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus").

Put simply, the state courts reasonably concluded that the evidence was insufficient to suggest that Chen was aware of Petitioner's intent to kill Cong or that Chen encouraged or aided Petitioner in killing Cong.  Although Petitioner believes that further investigation would have yielded such evidence, he provides nothing other than his own self-serving allegations to support that belief.  Such conclusory, unsupported allegations, however, do not warrant habeas relief.  *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief."); *Jones v. Gomez*, 66 F.3d 199, 205 (9th Cir. 1995) (habeas relief not warranted where claims for relief are unsupported by facts).

Regardless, even if the jury had been instructed to view Chen's testimony with caution, it would in all likelihood have reached the same conclusion.  Indeed, emphasizing Chen's purported awareness of Petitioner's plan would only serve to drive home to the jury that the murder was premeditated and deliberate.  More importantly, Chen's testimony regarding Petitioner's actions was corroborated in every material way by that of Hoang.  Given that corroborating testimony, the jury would have had no reason to reject Chen's testimony, even if the jury had initially viewed Chen's testimony with caution.

### 2.   Voluntary Manslaughter

Voluntary manslaughter is the "unlawful killing of a human being without malice . . . upon a sudden quarrel or heat of passion."  Cal. Penal Code § 192(a). A conviction for voluntary manslaughter is appropriate if the victim has provoked the defendant in a manner causing "'the reason of the accused [to be] obscured or disturbed by passion to such an extent as would cause the ordinarily reasonable person of average disposition to act rashly and without deliberation and reflection,

16

1   and from such passion rather than from judgment.'"  *People v. Barton*, 12 Cal. 4th

2   186, 201, 47 Cal. Rptr. 2d 569, 906 P.2d 531 (1995).  The California Supreme

3   Court has noted, however, that "'if sufficient time has elapsed between the

4   provocation and the fatal blow for passion to subside and reason to return, the

5   killing is not voluntary manslaughter. . . .'"  *People v. Breverman*, 19 Cal. 4th 142,

6   163, 77 Cal. Rptr. 2d 870, 960 P.2d 1094 (1998).

7        Here, counsel could not have performed deficiently in failing to request that

8   the jury be instructed on voluntary manslaughter under a heat of passion or sudden

9   quarrel theory because, as the court of appeal held, the evidence at trial was

10   insufficient under California law to support such an instruction.  This Court is

11   bound by the state Court of Appeal's interpretation of state law.  *See Bradshaw*,

12   546 U.S. at 76 (*supra*).

13        Moreover, after independently reviewing the evidence, this Court concurs

14   that no evidence supported a voluntary manslaughter instruction.  On the contrary,

15   no evidence at trial indicated any provocation on the victim's part, nor was there

16   any evidence that Petitioner acted in the heat of passion.  Rather, the eyewitnesses

17   expressed surprise at Petitioner's unprovoked actions.  And, based on Petitioner's

18   act of arming himself and his subsequent explanation for his actions, it is clear

19   that he did not act in the heat of passion.  Thus, counsel could not have erred in

20   failing to request an instruction based on sudden quarrel or heat of passion.

21        Furthermore, assuming Petitioner could establish deficient performance, he

22   cannot show prejudice from the lack of a heat of passion or sudden quarrel

23   instruction.  The jury found Petitioner guilty of premeditated and deliberate

24   murder.  That verdict necessarily shows that the jury did not believe that Petitioner

25   acted in the heat of passion or in response to a sudden quarrel; rather, the verdict

26   shows that the jury believed that Petitioner intended to kill his victim and that his

27   intent "had been formed upon pre-existing refection and *not under a sudden heat*

28   *of passion* or other condition precluding the idea of deliberation. . . ."  (CT 117

(emphasis added).)  Thus, there is no reason to believe that the jury would have found Petitioner guilty of voluntary manslaughter under the heat of passion or sudden quarrel theory, had counsel requested such an instruction.

### 3.    Cross-Examination of Hoang

Petitioner can show no prejudice from counsel's purported inadequate cross-examination of Hoang.  At best, Petitioner notes that counsel failed to highlight Hoang's supposed contradictory statements about whether or not he saw someone exit and enter the car in which Petitioner drove away after murder.  Any cross-examination on this point, however, would not have influenced the jury's verdict because the proposed cross-examination had no impact on Hoang's testimony that he saw Petitioner draw a gun, chase down Chen, and shoot multiple times.  Moreover, that aspect of Hoang's testimony – that is, the portion in which he describes Petitioner's actions – was corroborated by Chen, who likewise witnessed Petitioner draw a gun, chase Cong, and gun him down.  Given that testimony, there is no reason to believe that Petitioner suffered prejudice from counsel's purported failure to cross-examine Hoang on a relatively inconsequential point.

### C.    Appellate Counsel's Performance

In his next claim for relief, Petitioner contends that he was denied his right to effective assistance of appellate counsel because his appellate counsel failed to allege on appeal the preceding ineffective assistance of trial counsel claims.

The Due Process Clause guarantees a criminal defendant effective assistance of counsel on his first appeal as of right.  *Evitts v. Lucey*, 469 U.S. 387, 391-405, 105 S. Ct. 830, 83 L. Ed. 2d 821 (1985).  The standard for assessing the performance of trial and appellate counsel is the same.  *Id.* at 395-99.  Under both, Petitioner bears the burden of establishing both components of the standard set forth in *Strickland*.  466 U.S. at 687 (*supra*).  Appellate counsel has no constitutional duty to raise every issue, where, in the attorney's judgment, the

18

1   issue has little or no likelihood of success.  *McCoy v. Wisconsin*, 486 U.S. 429,

2   436, 108 S. Ct. 1895, 100 L. Ed. 2d 440 (1988).

3       Here, Petitioner was not deprived of his constitutional right to effective

4   assistance of appellate counsel.  As an initial matter, Petitioner's ineffective

5   assistance of trial counsel claims involve matters outside of the trial record, such

6   as why counsel decided against conducting further investigation into Chen's

7   background, why counsel elected against challenging the trial court's finding that

8   an instruction on accomplice testimony was unwarranted, and why counsel did not

9   press for an instruction on the lesser included offense of manslaughter.

10  Consequently, those claims were not proper ones to assert on direct appeal.  *See*

11  *People v. Mendoza Tello*, 15 Cal. 4th 264, 266-67, 62 Cal. Rptr. 2d 437, 933 P.2d

12  1134 (1997) (ineffective assistance of counsel claims not proper on direct appeal

13  unless record illuminates all facts necessary to resolve claim, including basis for

14  counsel's challenged decision or shortcoming).  Regardless, as explained above,

15  each of the claims that Petitioner faults his counsel for declining to raise fails on

16  its merits.  And, each claim was rejected on the merits by the California Supreme

17  Court.  Thus, Petitioner can show no prejudice from appellate counsel's failure to

18  assert those claims on direct appeal.

19      Accordingly, habeas relief is not warranted as to Petitioner's ineffective

20  assistance of appellate counsel claim.

21      **D.    Conflict of Interest**

22      In his final claim for relief, Petitioner contends that he was denied his Sixth

23  Amendment right to counsel because his trial counsel was laboring under an

24  actual conflict of interest.  In support of this claim, Petitioner maintains that an

25  unidentified conflict caused his trial counsel to neglect his duty to investigate and

26  present facts related to Chen and to fail to call Petitioner's brother as a witness.

27  Petitioner further asserts that, had counsel not been laboring under this purported

28  conflict, he would have been able to successfully undermine Chen's credibility

1   and, presumably, to persuade the jury to find Petitioner not guilty of the first

2   degree murder count.  The California Supreme Court rejected this claim on the

3   merits.  As explained below, the California Supreme Court did not commit

4   constitutional error in doing so.

5        The Sixth Amendment right to counsel includes the right to assistance by a

6   conflict-free attorney.  *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 67

7   L. Ed. 2d 220 (1981).  Where a petitioner raises a Sixth Amendment challenge

8   based on a conflict of interest, the defendant must demonstrate that his attorney's

9   performance was "adversely affected" by the conflict of interest.  *Mickens v.*

10  *Taylor*, 535 U.S. 162, 174, 122 S. Ct. 1237, 152 L. Ed. 2d 291 (2002).

11       Here, Petitioner has failed to show that counsel was laboring under a

12  conflict of interest that adversely impacted his performance.  On the contrary,

13  Petitioner does not even identify the conflict under which counsel was purportedly

14  laboring.  Instead, he merely attempts to use this claim to repackage the

15  allegations underlying his first ineffective assistance of counsel claim – namely,

16  that his trial counsel failed to conduct an adequate investigation into the facts

17  underlying Petitioner's conviction.  But, as explained above, there is no merit to

18  that claim.  Although Petitioner adds the allegation that counsel erred in failing to

19  call Petitioner's brother as a witness, that allegation is of no consequence in terms

20  of Petitioner's conflict of interest claim.  Indeed, even if counsel had performed

21  deficiently in that regard, nothing suggests that counsel's purported deficient

22  performance was attributable to a conflict of interest.  Accordingly, this claim

23  fails.

24  / / /

25  / / /

26

27

28

20

1

**ORDER**

2        Therefore, the Court orders that judgment be entered denying the Petition

3   on the merits with prejudice.

4

5   DATED: June 10, 2014

6

7

8                                    /S/ FREDERICK F. MUMM
                                     FREDERICK F. MUMM
9                                    United States Magistrate Judge

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28